IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEANGELO MOODY, | ) |
| Petitioner, | ) |
| v. | ) Case No. 3:17-cv-01452 |
| | ) Judge Trauger |
| MIKE PARRIS, Warden, | ) |
| Respondent. | ) |

# MEMORANDUM

The petitioner, DeAngelo Moody, has filed two post-judgment motions in this habeas corpus action: a Motion for Relief From Judgment Under Federal Rule of Civil Procedure 60(b) (Doc. No. 32) and a Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (Doc. No. 33). The respondent filed responses in opposition to both motions (Doc. Nos. 40, 41), and the petitioner filed briefs in reply to those responses (Doc. Nos. 43, 45).

For the reasons given below, and by contemporaneous order, the court will deny the petitioner's post-judgment motions.

## I. BACKGROUND

The petitioner is currently serving a sentence of life in prison based on his May 12, 2011 conviction by a Davidson County, Tennessee jury of first-degree felony murder. On November 15, 2017, he filed his pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The court found that the Petition contained exhausted claims of (1) insufficiency of the evidence and (2) ineffective assistance of counsel, for failing to interview and call as a witness a co-defendant, Ortago Thomas. These claims were denied on their merits. The Petition's remaining claims of ineffective assistance and trial court error were denied on grounds of

procedural default unexcused by any showing of cause and prejudice, including an insufficient showing of the petitioner's actual innocence based on the post-conviction testimony of Mr. Thomas. (Doc. Nos. 19, 20.)

On March 5, 2020, the court entered judgment denying the Petition for Writ of Habeas Corpus and dismissing this action. (Doc. No. 21.) Finding that reasonable jurists could debate "whether the petitioner's exhausted claim of ineffective assistance of counsel has merit, and whether his showing of actual innocence via Ortago Thomas's testimony is sufficient to excuse his procedural default," the court granted a certificate of appealability (COA) on those issues. (Doc. No. 20.)

The petitioner appealed this court's decision to the Sixth Circuit Court of Appeals, where counsel was appointed for the petitioner "[g]iven the procedural complexity of the issues certified for appeal by the district court." *Moody v. Parris*, No. 20-5299, Doc. No. 8-2 at 8 (6th Cir. Aug. 3, 2020). In its order appointing counsel, the Sixth Circuit considered the petitioner's request to expand the scope of the appeal by enlarging this court's COA to include the remaining claims of his pro se Petition. *Id.* at 3–9. The Sixth Circuit denied this request, leaving the issues for appeal as certified by this court. But appellate briefing was held in abeyance, *id.*, Doc. No. 15, in light of counsel's filing in this court of the pending motions under Rules 60(b) and 62.1.

The Sixth Circuit's order declining to expand the COA further describes the pertinent background and procedural history of this case, as follows:

> In the course of a drive-by shooting in Nashville, Tennessee, a sixteen-year old girl was killed by a stray bullet that entered her home. Moody, Thomas, and Martez D. Matthews were each indicted for one count of first-degree felony murder and one count of employing a firearm during the commission of a dangerous felony. All three defendants were minor teenagers at the time of indictment. Thomas's case was severed, and Moody and Matthews were tried together. [footnote: "Thomas entered a plea of guilty to second-degree murder and received a fifteen-year term of imprisonment."] A jury subsequently found Matthews guilty on both charges,

2

while finding Moody guilty of felony murder but acquitting him on the firearm charge. The trial court sentenced both defendants to life imprisonment.

Moody appealed, challenging the sufficiency of the evidence. The Tennessee Court of Criminal Appeals found no error and affirmed but remanded for the entry of judgment to reflect that Moody was acquitted of the firearm charge. *State v. Moody*, No. M2011-01930-CCA-R3CD, 2013 WL 1932718, at *1 (Tenn. Crim. App. May 9, 2013), *perm. app. denied*, (Tenn. Oct. 17, 2013).

In 2014, Moody filed a pro se petition for post-conviction relief, asserting the ineffective assistance of counsel. Appointed counsel filed an amended petition that included additional allegations of trial counsel's ineffective assistance. One of the allegations was that trial counsel was ineffective for failing to interview Thomas or call him as a witness. Thomas stated at the postconviction hearing that he would have testified at Moody's trial that Moody did not have a gun and that it was only Thomas and another individual named Quontez Caldwell who did the shooting; Thomas stated that Matthews also had a gun but that Caldwell was using it. *See Moody v. State*, No. M2015-02424-CCA-R3PC, 2017 WL 829820, at *6-7 (Tenn. Crim. App. Mar. 2, 2017). The trial court concluded that Moody was entitled to post-conviction relief based on a finding that trial counsel was ineffective for failing to interview Thomas or call him as a witness at trial; the trial court denied all other claims raised by Moody. The state appealed, and Moody responded but did not challenge the rejection of his remaining issues. The Tennessee Court of Criminal Appeals reversed. *Id.*, at *10-11. The Tennessee Supreme Court denied Moody's application for permission to appeal on June 9, 2017.

Moody timely filed this habeas petition in November 2017, raising the following claims: (1) the evidence was insufficient to support his conviction; (2) trial counsel was ineffective for failing to prepare for trial, move to sever his trial from Matthews's trial, move for dismissal of all charges after he was acquitted of the firearm charge, and challenge the constitutionality of his sentence under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010); (3) the trial court failed to act as a thirteenth juror; (4) the trial court erred by failing to allow him to retain counsel of his choice; and (5) his sentence was unconstitutional in light of *Miller* and *Graham*. The warden filed a response, asserting that the majority of Moody's claims were unexhausted or procedurally defaulted and that his remaining claims did not warrant habeas relief. Moody filed a reply.

After review, the district court concluded that the state court's adjudication of Moody's insufficient-evidence claim was not contrary to clearly established federal law. It further concluded that, except for his claim regarding counsel's failure to prepare for trial as it related to Thomas, Moody procedurally defaulted his ineffective-assistance-of-counsel claims by failing to cross-appeal the trial court's denial of them on post-conviction review. Although Moody argued that counsel ignored his instructions to present these claims to the appellate court, the district court concluded that counsel's deficient performance could not establish cause to

3

excuse his default. With respect to the claim alleging ineffective assistance in connection with Thomas's testimony, the district court determined that it did not warrant relief, but concluded that reasonable jurists could debate that conclusion and granted a COA as to that issue. Finally, the district court concluded that claims (3), (4), and (5) were not presented to the appellate court and were therefore defaulted, and that Moody's claim of actual innocence, based on Thomas's post-conviction testimony, was insufficient to excuse the default. However, the district court determined that its conclusion was debatable among jurists of reason and also granted a COA on that procedural issue. The district court therefore denied Moody's habeas petition and granted a COA on "whether [Moody]'s undefaulted claim of ineffective assistance of counsel has merit, and whether his showing of actual innocence via Ortago Thomas's testimony is sufficient to excuse his procedural default" on claims (3), (4), and (5).

*Moody*, No. 20-5299, Doc. No. 8-2 at 1–3.

## II. ANALYSIS OF THE MOTIONS

A. Rule 62.1 Motion

"Under Rule 62.1, a district court may make certain indicative rulings on motions that the court lacks authority to grant because of a pending appeal. A district court may defer considering the motion, deny the motion, or state that it would grant the motion or that the motion raises a substantial issue." *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 382 (6th Cir. 2014) (citing Fed.R.Civ.P. 62.1(a)). As explained below, the court will deny the Rule 60(b) Motion in part and defer consideration of it in part. The petitioner's Rule 62.1 Motion for a ruling indicating that it would grant the Rule 60(b) Motion or that it raises a substantial issue requiring further review in the district court will therefore be denied.

B. Rule 60(b) Motion

The petitioner seeks relief from this court's judgment dismissing his pro se habeas petition, citing Rule 60(b)(1) and (2). Subsection (b)(1) authorizes relief from judgment in the event of "mistake, inadvertence, surprise, or excusable neglect"; subsection (b)(2) allows relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in

4

time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(1), (b)(2). Relief under any subsection of Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). "Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info–Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citing cases).

The petitioner argues that this court's judgment dismissing his habeas petition is undermined by two errors redressable as "mistakes" under Rule 60(b)(1), and by the fact that it lacked the benefit of newly discovered witness-recantation evidence under Rule 60(b)(2). Prior to analyzing these arguments, however, "[w]hen faced with a Rule 60(b) motion filed in response to the denial of an application for habeas relief, the district court must first determine whether the petitioner is only seeking Rule 60(b) relief or is attempting to file a second or successive habeas application." *Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005)). Pertinent provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limit the circumstances under which a state prisoner may file, and the district court may entertain, a second or successive application for habeas relief, as follows:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

5

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).

For these purposes, the Sixth Circuit does not distinguish between a Rule 60(b) motion filed during the pendency of the appeal from the denial of the movant's first habeas petition, and one filed after all appellate remedies have been pursued to completion; if a Rule 60(b) motion seeks to raise habeas claims, it is a second or successive habeas petition that requires circuit court authorization. *Moreland v. Robinson*, 813 F.3d 315, 324 (6th Cir. 2016). Accordingly, the court must determine whether the petitioner's Rule 60(b) motion seeks to litigate habeas claims, or merely to challenge the court's previous finding of a procedural bar to consideration of the merits of such claims. As explained below, the court finds that the petitioner's motion based on legal error under Rule 60(b)(1) does not assert habeas claims but nonetheless fails to establish grounds for relief, while his motion based on new evidence under Rule 60(b)(2) implicates a habeas claim and is otherwise in a procedural posture that makes it improper for this court to adjudicate.

1. Rule 60(b)(1) — Erroneous Findings of Procedural Default and Exhaustion

Rule 60(b)(1) allows for relief where the court has made "a substantive mistake of law or fact in the final judgment or order." *Huffman v. Speedway LLC*, 621 F. App'x 792, 795 n.2 (6th Cir. 2015) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)). The

6

petitioner asserts that such substantive mistakes were made in this case, in the court's determination of which claims were or were not subject to review on their merits.

As noted by the Sixth Circuit, this court found that all the petitioner's habeas claims had been exhausted, either properly (by presentation to the Tennessee Court of Criminal Appeals (TCCA)) or technically (by procedural default). The court reviewed the merits of the properly exhausted claims of sufficiency of the evidence (exhausted on direct appeal) and trial counsel's ineffectiveness vis-à-vis Thomas (exhausted on post-conviction appeal), while declining to review the merits of the remaining claims in the first instance[1] due to their unexcused procedural default. The petitioner now argues that the court erred in finding his claims either procedurally defaulted or fully exhausted on post-conviction appeal, because those claims were not abandoned or finally adjudicated at that stage but remain pending, nearly four years later, in the post-conviction trial court. In response, the state argues that those claims and others made in the post-conviction trial court were resolved in litigating the case after counsel was appointed, and have not been considered "live" claims by the state courts or the parties since the TCCA rendered its 2017 decision on post-conviction appeal, which the Tennessee Supreme Court then declined to review.

In support of his argument, the petitioner directs the court to the record of proceedings on initial post-conviction review. He asserts that each of the claims of the original, pro se post-conviction petition were preserved for review in appointed counsel's amended post-conviction petition, by the latter's incorporation of "all factual and legal allegations contained in all the motions and pro se petitions [the petitioner] has filed previously in this matter." (Doc. No. 7-15 at 87.) Following this global incorporation-by-reference in its introduction, the amended post-

---

[1] The court alternatively considered whether the petitioner—if his default could be excused—could demonstrate prejudice from any claimed errors of counsel or other constitutional harm from the trial court errors he alleged, and found that he could not. (Doc. No. 19 at 24–25, 32–33.)

7

conviction petition asserted two claims to relief: ineffective assistance of counsel (based on counsel's failure to adequately investigate the case, communicate with the petitioner, cross-examine witnesses, file proper motions, advise the petitioner regarding whether he should testify, or explain the charge he was facing) and structural error related to the trial court's effective denial of the petitioner's right to counsel (based on counsel's deficient performance being the equivalent of having no counsel at all, the trial court's failure to relieve the petitioner from the ineffective representation, and the trial court's failure to continue the trial date so that substitute counsel could adequately prepare to undertake the representation). (Doc. No. 7-15 at 91–98.) The amended post-conviction petition then closed with a claim that the petitioner's federal and state constitutional rights were violated by "[t]he cumulative effect of all errors" made during trial proceedings. (*Id.* at 99.) In asserting this claim, the amended post-conviction petition explains as follows:

> Mr. Moody hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Moody in connection with [his] criminal case, and any further amended motions or petitions to be filed by Mr. Moody at any time in the future.

(*Id.*) It is from these references in the amended post-conviction petition filed by counsel—as well as the fact that a pro se brief in support of the claims of the original, pro se petition was filed on the same day as counsel's amendment—that the petitioner's current counsel concludes that there are live claims that remain pending before the post-conviction trial court. Counsel argues that the pendency of these live claims should have rendered improper the subsequent exercise of jurisdiction in the TCCA and the Tennessee Supreme Court, and that it certainly rendered erroneous this court's finding that all available state remedies had been exhausted.

The court disagrees. The post-conviction trial court rendered a post-hearing decision that granted relief on the ineffective assistance of counsel claim and denied relief on the structural error

8

claim, ordering "that the Petition for Post-Conviction Relief be granted and a new trial be set." (Doc. No. 7-16 at 127.) It also expressly denied the petitioner's cumulative error claim (which it termed a claim of "cumulative error of Mr. Kovach's representation of Petitioner") as moot. (*Id.* at 126.) It did not reserve ruling on any other claims. Contrary to current counsel's argument, the trial court's decision was a final judgment that disposed of all claims to post-conviction relief, inasmuch as it "decide[d] the controversy between the parties on the merits and fixe[d] their rights so that, if the judgment [were] affirmed, nothing remain[ed] for the trial court to do but to proceed with its execution." *Abston v. State*, No. W2014-02513-CCA-R3-PC, 2016 WL 3007026, at *7 (Tenn. Crim. App. May 17, 2016) (quoting *State v. Comer*, 278 S.W.3d 758, 761 (Tenn. Crim. App. 2008)).

Counsel cites *Save Our Fairgrounds v. Metro. Gov't of Nashville*, No. M2019-00724-COA-R3-CV, 2019 WL 3231381 (Tenn. Ct. App. July 18, 2019), for the proposition that a trial court order that does not adjudicate all claims is not a final judgment. But the trial court in that case dismissed the plaintiff's case on summary judgment without considering two of the plaintiff's claims for relief, and the appellate court found that the defendant had not carried its burden of proving that the plaintiff's two remaining claims had been waived in the trial court or abandoned on appeal, *id.* at *4–7; whereas here, the post-conviction trial court fully granted the relief requested by the petitioner based on a finding in his favor on the ineffective-assistance claim, denied relief on the structural error claim, found the cumulative error claim moot, and denied *sub silentio* any claims not encompassed by these rulings (whether those other claims were also deemed moot, or were considered waived or plainly unmeritorious) in entering judgment for the petitioner. The sweep of the judgment was further recognized when the state's subsequent appeal was noticed, docketed, and adjudicated as an appeal "as of right" under Tennessee Rule of

9

Appellate Procedure 3(c), "from the final judgment" of the trial court (Doc. Nos. 7-16 at 131, 7-23 at 1)—not as an interlocutory appeal under Tennessee Rule of Appellate Procedure 9(g) that left issues pending in the trial court.

Furthermore, even if there were grounds for finding that one or more post-conviction claims were left pending by their exclusion from the trial court's judgment, any such claims were subsequently abandoned on appeal. When the state appealed from the grant of post-conviction relief to the petitioner, arguing that the trial court erred in "finding that trial counsel was ineffective for failing to interview or call the petitioner's co-defendant [Ortago Thomas] to testify at trial (Doc. No. 7-22 at 6), the petitioner, as appellee, responded in defense of the trial court's decision (Doc. No. 7-21) but failed to assert any grounds for relief from those aspects of the judgment that were unfavorable to him. Counsel argues before this court that "[t]he TCCA appeal was not Moody's to shape" (Doc. No. 33-1 at 25), and that post-conviction counsel could not have appealed the unaddressed "live claims" "because there was no adverse judgment on those claims to appeal from" (Doc. No. 45 at 10 n.3), but it appears that Tennessee law required the petitioner to raise before the TCCA *any* reasons for believing that his conviction was unlawful, regardless of his status as appellee, in order to avoid forfeiture of such claims. *See State v. Stewart*, 439 S.W.3d 906 (Tenn. Crim. App. 2013).

In *Stewart*, at 907–08, the TCCA considered the case of a defendant who had been convicted of vehicular assault and sentenced to one year of incarceration followed by 12 years of placement in a community corrections program. The defendant, Stewart, recognized the favorable sentence he had received and did not initially appeal. But the state filed an appeal arguing for reversal of the trial court's judgment because Stewart was statutorily ineligible for a community corrections sentence. Stewart filed a brief in opposition to the state's appeal, but the TCCA agreed

10

Case 3:17-cv-01452   Document 46   Filed 04/14/21   Page 10 of 20 PageID #: 2251

with the state and remanded the case for resentencing in accord with the pertinent statutory guidelines. On remand, the trial court entered a judgment ordering Stewart to serve the entirety of his 12-year sentence in prison. Stewart timely filed a motion for new trial challenging his resentencing and raising several issues with respect to the guilt phase of his trial, including the insufficiency of the evidence to support his conviction. After considering the issues raised in the motion for new trial, the trial court denied the motion, whereupon Stewart filed an appeal before the TCCA challenging the sufficiency of the convicting evidence. *Id.*

The TCCA held that Stewart "forfeited his challenge to the sufficiency of the evidence by failing to raise it in his first appeal." *Id.* at 908. The appellate court noted that, even though the state filed the first appeal to challenge the community corrections sentence, Stewart had both the opportunity and the obligation at that time to raise any issues related to his conviction. *Id.* (citing Tenn. R. App. P. 27(b) ("If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief as well as the answer to the brief of appellant.")). When he failed to do so, the first TCCA decision became the law of the case; as such, it narrowed the issues in the case "to the single issue of the propriety of the sentence," and further constricted the trial court's authority to only those actions contemplated in the instructions on remand. *Id.* at 908–09. The TCCA held that "the trial court was bound by the remand order strictly to the issue of the defendant's sentence," and that even though the trial court had considered the defendant's insufficient-evidence claim on the merits, the defendant's appeal of that ruling was procedurally barred by his failure to raise the issue in his first appearance before the TCCA. *Id.* at 909.

In the case before this court, the TCCA observed that the post-conviction trial court "granted relief based on a finding that trial counsel was ineffective for failing to interview Mr.

11

Thomas or call him as a witness at trial" and "denied relief on all other claims raised by the petitioner." (Doc. No. 7-23 at 12.) With the appeal framed exclusively around the one claim that the trial court decided in favor of the petitioner, and not his "other," "denied" claims, the TCCA's opinion "reverse[d] the post-conviction court's grant of relief and reinstate[d] the judgment against the petitioner." (*Id.* at 17.) The TCCA entered judgment effecting this reversal of the lower court, taxing the costs of the appeal to the state, and remanding the case to the trial court "for further proceedings consistent with this court's opinion and for collection of costs accrued below." (Doc. No. 7-26.)

Counsel argues that, following the Tennessee Supreme Court's June 9, 2017 denial of permission to appeal this judgment (Doc. No. 32-5 at 2), and pursuant to the TCCA's remand for further proceedings, the trial court should have proceeded to adjudicate the "live claims," which remained pending because "Moody never waived or otherwise withdrew them." (Doc. No. 33-1 at 23.) Counsel argues that these pending claims are, at worst, unexhausted through no fault of the petitioner's or, at best, "exhausted by Moody's fair presentation and the trial court's subsequent failure to adjudicate them," but have not in either event been procedurally defaulted, as this court mistakenly found. (*Id.* at 22–23.) However, this argument is not persuasive. For purposes of deciding whether grounds exist for relief under Rule 60(b)(1), the court finds that, under the holding in *Stewart*, the petitioner forfeited further review of the claims that the post-conviction trial court did not decide favorably to him when he failed to raise the lack of a favorable decision on those claims as an issue before the TCCA. Accordingly, this court did not err in finding those claims procedurally defaulted.

Relatedly, counsel argues that the TCCA left the claim of ineffective assistance with regard to interviewing or calling Thomas unresolved, as "[n]othing in the TCCA's opinion precluded the

12

post-conviction court on remand from making additional fact findings regarding [that claim]"; therefore, the petitioner argues that this court should award relief from judgment due to its mistake in labeling the claim exhausted. (*Id.* at 24–25.) But the TCCA did not vacate the trial court's award of relief and remand for further factfinding; it reversed and ordered reinstatement of the judgment against the petitioner after "conclud[ing] that trial counsel did not render deficient performance" and determining that the record "support[ed] a finding that there was no reasonable probability that the result of the trial would have been different had Mr. Thomas testified." *Moody v. State*, No. M2015-02424-CCA-R3-PC, 2017 WL 829820, at *10–11 (Tenn. Crim. App. Mar. 2, 2017), *perm. app. denied* (Tenn. June 9, 2017). "Black's Law Dictionary . . . underscores the distinction between vacatur and reversal[:] Although the word reverse shares vacate's meanings of to annul and to set aside, it has an additional, more extensive definition: 'To reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it *for error*.'" *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 12, 18 (D.D.C. 1998) (citations omitted; emphasis in original). The TCCA reversed the award of relief to the petitioner based on what it determined to be an erroneous judgment of the trial court. It further ordered reinstatement of the judgment originally imposed on the petitioner, an order unsurprisingly accompanied by remand to the trial court. *See Dart v. United States*, 848 F.2d 217, 230 (D.C. Cir. 1988) ("Rarely if ever would an appellate court reverse a judgment that was in a defendant's favor and impose a judgment against him, without remanding the matter to the [trial] court."). This ineffective-assistance claim was thus finally determined at the appellate level and was fully exhausted when the Tennessee Supreme Court denied the petitioner's request for review of the TCCA's decision. Accordingly, this court did not err in

13

adjudicating the claim upon habeas review.[2]

In sum, the court finds that the petitioner has not carried his burden of showing any error justifying relief from the court's judgment under Rule 60(b)(1). The petitioner's Motion seeking such relief will be denied.

B. Rule 60(b)(2) — New Evidence of Actual Innocence

Counsel asserts that the petitioner is entitled to relief from judgment in light of new evidence demonstrating his actual innocence, in the form of Quantez Caldwell's testimony on September 23, 2020, at a hearing on the petitioner's pending motion for writ of error coram nobis in the state trial court.[3] (Doc. No. 32-2 (hearing transcript).) He states that "Rule 60(b)(2) provides for relief when (1) a habeas petitioner with newly discovered evidence exercises due diligence to obtain the evidence and (2) the new evidence would have produced a different outcome. (Doc. No. 33-1 at 26 (citing *Smith v. Bauman*, 2019 WL 4865345, at *2 (6th Cir. 2019)). Counsel proffers that Caldwell, the state's key witness and "the only witness that offered any evidence that Moody may be criminally responsible for the underlying events" (*id.* at 27), recanted his trial testimony during the coram nobis hearing. He asserts that he proceeded with due diligence in bringing

---

[2] Counsel apparently filed a second amended post-conviction petition in state court on December 8, 2020, several months after the Sixth Circuit exercised appellate jurisdiction and denied an expanded COA (Doc. No. 28), in order to "add[ ] a claim under *Brady v. United States*, 397 U.S. 742 (1970), and further brief[ ] the remanded Thomas IAC Claim." (Doc. No. 45 at 4, 7–8 n.2.) He reports that the state responded to this new attempt to amend the post-conviction petition, and that he filed a reply to the state's response, but that the trial court has not yet acted. (*Id.*) The bare fact that these state-court filings were made do not affect this court's review for error under Rule 60(b)(1).

[3] Under Tennessee law, "a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b). The petitioner filed a pro se application for writ of error coram nobis in the Davidson County Criminal Court on November 8, 2019, asserting Caldwell's desire to recant his trial testimony. (Doc. No. 32-2; Doc. No. 32-6 at 11.) The coram nobis application was subsequently amended by counsel twice in early 2020, and the matter came to be heard last September. (Doc. Nos. 32-3, 32-4; Doc. No. 32-6 at 11.) The application has not yet been decided.

14

Caldwell's state-court testimony before this court, and that its revelation would have changed the outcome of the petitioner's trial because, "[a]fter Caldwell's recantation, the State's only incriminating evidence is gone" and "no jury could have reasonably convicted Moody" on the remaining record. (*Id.* at 26–27.) Counsel concludes that the petitioner is therefore entitled to relief from this court's judgment that his showing of actual innocence was insufficient to excuse his procedural default.

In response, the state argues that this court cannot entertain the petitioner's Rule 60(b)(2) motion and proffer of new evidence unless the Sixth Circuit first authorizes its filing as a second or successive habeas petition under 28 U.S.C. § 2244(b)(3)(A), because the motion "clearly argues that this Court should revisit its rejection of his previous actual innocence argument" and thus attacks the court's previous ruling on the merits of a habeas claim. (Doc. No. 40 at 3–4.) The petitioner replies that his motion under Rule 60(b)(2) does not advance a freestanding actual-innocence claim, but clearly "seeks relief from the Court's actual-innocence findings made in its procedural default analysis." (Doc. No. 45 at 6.)

As the Sixth Circuit has explained in addressing the sometimes-difficult distinction between Rule 60(b) grounds and successive habeas claims,

> Case law provides us with some guidance in delineating the boundary between the two. A petitioner's Rule 60(b) motion is a "second or successive" habeas application "when it 'seeks vindication of' or 'advances' one or more 'claims.'" *Post v. Bradshaw*, 422 F.3d 419, 424 (6th Cir. 2005) (quoting *Gonzalez*, 545 U.S. at 531–32). A "claim," in turn, "is 'an asserted federal basis for relief from a state court's judgment of conviction.'" *Ibid.* (quoting *Gonzalez*, 545 U.S. at 530). For example, a habeas petitioner's Rule 60(b) motion advances claims "when [the petitioner] seeks to add a new ground for relief or seeks to present 'new evidence in support of a claim already litigated.'" *Moreland*, 813 F.3d at 322 (quoting *Gonzalez*, 545 U.S. at 531). By contrast, a petitioner does not seek to advance new claims "when [his] motion 'merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" *Post*, 422 F.3d at 424 (quoting *Gonzalez*, 545 U.S. at 532 n.4).

*Franklin v. Jenkins*, 839 F.3d 465, 473 (6th Cir. 2016).

Here, contrary to the state's argument, the Rule 60(b)(2) motion explicitly offers the evidence of Caldwell's recantation to "demonstrate[ ] Moody's actual innocence such that certain claims found to be procedurally defaulted can be heard on the merits" (Doc. No. 33-1 at 6)—not to establish error in any prior rejection of the merits of the underlying claims. Counsel submits that the evidence is sufficiently probative to excuse any "lingering procedural defaults . . . under the actual innocence exception," and notes that "to the extent that the Court would want to test the veracity of Caldwell's testimony" offered for that purpose, "it should consider ordering an evidentiary hearing on Moody's actual innocence." (*Id.* at 26 & n.8.)

However, while the Rule 60(b)(2) motion seeks relief without explicitly "attack[ing] the . . . court's previous resolution of a claim on the merits," *Gonzalez*, 545 U.S. at 532, the new evidence implicitly attacks the court's resolution of the merits of the petitioner's sufficiency-of-the-evidence claim. According to the Sixth Circuit, "[i]t makes no difference that the motion itself does not attack the district court's substantive analysis" of the merits of a habeas claim—"all that matters is that [the petitioner] is 'seek[ing] vindication of' or 'advanc[ing]' a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." *Post*, 422 F.3d at 424–25 (quoting *Gonzalez*, 545 U.S at 531–32); *see also*, *e.g.*, *Rodwell v. Pepe*, 324 F.3d 66, 70–71 (1st Cir. 2003) (cited in *Gonzalez*, 545 U.S. at 531) (stating that district court must examine "the factual predicate set forth in support of a [Rule 60(b)(2)] motion to see if it "deals primarily with the constitutionality of the underlying state conviction or sentence"; joining circuit consensus that Rule 60(b) motion in a habeas case is a second or successive habeas petition if it "threatens to encroach upon precincts patrolled by the AEDPA" by relying on a "factual predicate . . . [that] constitutes a direct challenge to the constitutionality of the underlying conviction"). As

16

stated by the Supreme Court in *Gonzalez*, "even claims couched in the language of a true Rule 60(b) motion" may in fact be habeas claims that would circumvent AEDPA's strictures if not recognized as such; "[t]he same is true of a Rule 60(b)(2) motion presenting new evidence in support of a claim already litigated: Even assuming that reliance on a new factual predicate causes that motion to escape § 2244(b)(1)'s prohibition of claims 'presented in a prior application,' § 2244(b)(2)(B) requires a more convincing factual showing than does Rule 60(b)." 545 U.S. at 531.

The Rule 60(b)(2) motion before this court asks to introduce testimony that, if credited, would "leave[ ] the State with no evidence of Moody's guilt" inasmuch as "Caldwell was the only witness that offered any evidence that Moody may be criminally responsible for the underlying events." (Doc. No. 33-1 at 26–27.) Counsel observes that Caldwell's "testimony has been indisputably critical to court decisions maintaining Moody's conviction and the State has admitted as much," to the extent that "[a]fter Caldwell's recantation, the State's only incriminating evidence is gone." (*Id.* at 27; *see also* Doc. No. 45 at 5 (stating that Caldwell's "trial testimony was the ***only*** evidence linking Moody to the shooting" (emphasis in original)).) Previously, in asserting his "first and foremost" habeas claim that the evidence at trial was insufficient to support his conviction, the pro se petitioner argued that his conviction rested entirely upon Caldwell's testimony, which lacked corroborative support from even "a single piece of reliable, independent evidence." (Doc. No. 1 at 6; Doc. No. 15 at 2.) Both this court and the Sixth Circuit (in denying an expanded COA) rejected the evidence-based habeas challenge because the jury was entitled to rely on the testimony of an eyewitness such as Caldwell, even if that testimony was not corroborated by other witnesses. (Doc. No. 19 at 21 (ruling that "it is the province of the jury to determine the reliability of witness testimony, and Mr. Caldwell's testimony need not be corroborated for purposes of this court's

17

review for sufficiency of the evidence")); *Moody v. Parris*, No. 20-5299, Doc. No. 8-2 at 6 (6th Cir. Aug. 3, 2020) (ruling that "Caldwell's testimony that Moody had a weapon and was shooting . . . was sufficient for the jury to find" him criminally responsible for the conduct of his co-defendants). The court therefore finds that the petitioner's Rule 60(b)(2) motion "lead[s] inexorably to a merits-based attack on the prior dismissal of his habeas petition," *Post*, 422 F.3d at 424–25, in the form of a claim that the convicting evidence was not sufficient in light of Caldwell's recantation—a claim that is successive because it "reli[es] on a new factual predicate" "in support of a claim already litigated." *Gonzalez*, 545 U.S. at 531.

The Rule 60(b)(2) motion is thus a second or successive habeas application that must be authorized by the Sixth Circuit.

Accordingly, pursuant to Rule 62.1(a)(1), the court will defer consideration of the Motion to the extent that it seeks relief from judgment under Rule 60(b)(2), until such time as the Sixth Circuit authorizes its filing under Section 2244(b)(3)(A). The Clerk of Court will be directed to transfer the motion to the Sixth Circuit pursuant to 28 U.S.C. § 1631 and *In re Sims*, 111 F.3d 45 (6th Cir. 1997).

Alternatively, even if the relief sought here were clearly confined to the court's determination of unexcused procedural default, the court would still defer consideration of the Motion, since any review of the reliability of the new evidence would have to await the judgment of the state court on the petitioner's coram nobis petition. *See Bennett v. Mills*, No. 1:06-cv-254, 2007 WL 2823324, at *6 (E.D. Tenn. Sept. 27, 2007) ("This Court must defer to the state court's credibility determinations of witnesses whose demeanor has been observed by that court, unless Petitioner demonstrates the state credibility determinations are not supported by the record. Accordingly, in determining whether Petitioner has submitted credible new evidence of actual

innocence sufficient for the limited purpose of [excusing procedural default], the Court defers to the state coram nobis court's credibility determinations.") (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)). The witnesses whose testimony is offered to support the petitioner's actual-innocence assertion in this court, Caldwell and Thomas, have appeared and testified on multiple occasions before the state trial court, most recently at the hearing on the petitioner's pending coram nobis petition. (Doc. No. 32-1.) In considering whether coram nobis relief is appropriate, the trial judge will presumably weigh these witnesses' most recent testimony against his prior observations of their credibility. (*See* Doc. No. 7-15 at 23–25 & n.4.) Without knowing the state court's resolution of the matter, this court would be in no position to adjudicate the reliability of the new evidence offered in the petitioner's Rule 60(b)(2) Motion.

Deferral of further consideration in this court is also appropriate because the petitioner is currently seeking vacatur of his conviction and a new trial in two petitions pending in state court, while his federal habeas corpus action is being held in abeyance before the Sixth Circuit, subject to required joint status reports every 90 days. *Moody v. Parris*, No. 20-5299, Doc. No. 15 (6th Cir. Jan. 5, 2021). The Sixth Circuit will decide whether to continue to hold the matter in abeyance, or how best to proceed with the litigation of this case, but it does not appear that the petitioner's motion raises a substantial issue for this court to adjudicate at this time.

### III. CONCLUSION

In light of the foregoing, the petitioner's Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (Doc. No. 33) will be denied. The petitioner's Motion for Relief From Judgment Under Federal Rule of Civil Procedure 60(b) (Doc. No. 32) will also be denied to the extent that it seeks relief under Rule 60(b)(1). The court will defer consideration of the Rule 60(b)

19

Case 3:17-cv-01452   Document 46   Filed 04/14/21   Page 19 of 20 PageID #: 2260

Motion to the extent that it seeks relief under Rule 60(b)(2) and will transfer that part of the Motion to the Sixth Circuit for consideration as a second or successive habeas petition.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge